**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

| | |
|---|---|
| ALICIA STEPHENS, on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>AVAILITY, L.L.C.,<br><br>    Defendant. | )<br>)<br>) **CASE NO. 5:19-cv-236-JSM-PRL**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**STIPULATION AND PROPOSED ORDER REGARDING
THE DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND
HARD COPY DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 26(f), the Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information, hard copy documents, and privileged materials, as described further below. To better define the scope of their obligations with respect to preserving and producing such information and materials, the Parties hereby stipulate and agree to this Stipulation and Order Regarding the Discovery of Electronically Stored Information and Hard Copy Documents, which shall apply to all discovery in this action:

**1. INTRODUCTION**

  a. <u>Purpose</u>.  This Stipulation and Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol Order") shall govern the parties in the above-captioned case whether they currently are involved or become so in the future (the "Action").

LEGAL02/39240884v4

Nothing in this ESI Protocol shall be construed to affect the admissibility of discoverable information. Pursuant to the terms of this ESI Protocol, information regarding search process and electronically-stored information ("ESI") practices may be disclosed, but compliance with this ESI Protocol does not constitute a waiver, by any Party, of any objection to the production of particular ESI as irrelevant, undiscoverable, or otherwise inadmissible, unduly burdensome or not reasonably accessible, or privileged, nor does it constitute a waiver of any right to discovery by any Party. For the avoidance of doubt, a Party's compliance with this ESI Protocol will not be interpreted to require disclosure of information potentially protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege, protection, or immunity from disclosure.  This ESI Protocol is a supplement to the Federal Rules of Civil Procedure, this Court's Handbook on Civil Discovery Practice, and any other applicable orders and rules.  This ESI Protocol is subject to amendment or supplementation by the parties.

      b.    <u>Cooperation</u>.  The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Handbook on Civil Discovery Practice.

      c.    <u>Authenticity and Admissibility</u>.  Nothing in this ESI Protocol shall be construed to affect the authenticity or admissibility of any document or data. All objections to the authenticity or admissibility of any document or data are preserved and may be asserted at any time.

**2.      SCOPE AND LIMITATIONS OF PRESERVATION AND PRODUCTION OF ESI**

a.      The parties agree to take the considerations addressed in Fed. R. Civ. P. 26(b) into account for purposes of production of discovery in this matter. Adopting a tiered or sequenced approach to electronic discovery may be appropriate, and the parties agree to continue to consider and confer about the most efficient processes as discovery proceeds.

b.      The parties agree that they will engage in ongoing discussions regarding the appropriate scope and limitations of the discovery of ESI. The parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, relevant date ranges, possible custodians that may have potentially responsive information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

**3.      ESI SEARCH**

The parties will discuss and, where possible, attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties.

a.      If the Producing party proposes to use search terms, those terms will be subject to negotiation between the Parties. The negotiation process will include the exchange of a proposed list of search terms with an explanation of how such terms will be applied, a list of proposed custodians, and the time period or temporal scope of

documents that will be searched. In the event that the Parties cannot resolve a disagreement over a search term modification following a meet-and-confer, the producing Party will provide search term hit reports for each document collection where the terms were applied, including the following: (i) the number of documents with hits for that term; and (ii) the number of unique documents for that term, i.e., documents which do not have hits for any other term.

    b.    If the producing party proposes to limit its ESI search to certain custodians, then the Parties shall meet and confer regarding the selected custodians.

**4.**    **PRODUCTION FORMATS**

    a.    <u>Technical Specifications</u>.  The parties agree that attending to issues relating to form of production at the outset facilitates the efficient and cost-effective conduct of discovery. Appendix A sets forth technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties. Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce documents in PDF, TIFF, native and/or paper or a combination thereof as set forth in Appendix A. For good cause, a requesting party may request the production of documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer and the producing party shall not unreasonably deny such requests. The parties agree not to degrade the searchability of documents as part of the document production process. The

parties also recognize that in some instances where documents have been produced in a form other than native, subsequent production of the same documents in native form may be warranted for certain purposes.

  b. <u>Deduplication and E-Mail Threading</u>.  Deduplication of ESI is expected and the parties agree to continue discussions regarding the terms and conditions of deduplication. However, the parties agree that documents may be deduplicated globally at the family-group level provided that the producing party identifies the additional custodians in the "Other Custodian" metadata field as particularized in Appendix A. A party may also de-duplicate "near duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate". To the extent that deduplication is utilized, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication will nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial testimony.

  c. <u>Searchable Format</u>.  The parties share a desire to ensure that ESI is produced in an acceptable, searchable format. To that end, the parties have discussed but

5

LEGAL02/39240884v4

have not yet identified potentially relevant ESI that would not be amenable to the proposed technical specifications. The parties agree to meet and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful. The parties also recognize that certain information to be produced in discovery may warrant production in an alternative form for purposes of depositions and/or trial. To the extent that becomes necessary, the parties will meet and confer to reach agreement about such form and will seek Court intervention only if necessary.

      d.    <u>Encryption</u>. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

      e.    <u>Zero-Byte Files</u>. The parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If the requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting Party may request that the producing Party produce the zero-byte file. The requesting Party may provide a Bates number to the producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

      f.    <u>Embedded Objects</u>. Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and treated like attachments to the document. The parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and

need not be produced as separate documents by a producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

      g.    <u>Family Relationship</u>. The parties agree that non-responsive parent documents must be produced if they contain a responsive attachment and are not withheld as privileged. Non-responsive attachments to responsive parent emails need not be produced. A Bates numbered placeholder will be provided for any document withheld pursuant to this Section and shall state that a non-responsive attachment has been withheld from production.

**5.    USE OF TECHNOLOGY ASSISTED REVIEW OR OTHER ADVANCED TECHNOLOGY-BASED ANALYTICS**

      a.    A Party may use Technology Assisted Review ("TAR") to sort documents for linear review without disclosure of that use.

      b.    If a Party elects to use TAR to cull or otherwise limit the volume of unstructured ESI subject to linear review, the parameters set forth in this Section shall apply. A producing Party shall describe to a requesting Party the vendor and the TAR technology or tool being used, including a description of the TAR tool's procedures, prioritization and training of the TAR tool, as well as the precision and recall metrics that will be employed by the TAR tool.

      c.    A producing Party need not conduct any additional review of information subjected to, but not retrieved by, an agreed-upon TAR tool as part of the identification of the subset of information that will be subject to review and production.

**6.    CONFIDENTIALITY, PRIVACY, AND SECURITY OF INFORMATION**

      a.      The Stipulated Confidentiality Agreement, entered March 13, 2020 (ECF No. 38), will govern the treatment of information warranting confidential treatment. Nothing contained herein shall contradict the parties' rights and obligations with respect to the Stipulated Confidentiality Agreement.

      b.      The prosecution and defense of this Action will require the processing and review of ESI, including data containing Personally Identifiable Information ("PII"). In the interest of addressing privacy and security concerns, and in order to facilitate the processing and production of documents containing such data, the parties are prepared to discuss appropriate precautions and arrangements for reviewing such data, including, potentially, reviewing certain highly sensitive information maintained by the producing party on a dedicated document repository to be contracted for and managed by the producing party. The parties' discussions concerning the nature of information and data meriting this specialized treatment, the accessibility of this data, and the specific parameters to govern specialized review arrangements are ongoing.

      c.      Privilege.  Except as provided otherwise below, for any document withheld in its entirety or produced but redacted, the producing Party will produce privilege/redaction logs.  Privilege logs shall be produced after substantial completion of the document review and production by the parties.

           a. Privilege logs will include the privilege claimed, a description of the document that will enable other parties to assess the privilege claim and designated objective metadata fields to the extent they contain information and the information and is not privileged or protected.  Designated

LEGAL02/39240884v4

  objective metadata fields are: Author, From, To, CC, BCC, Date, Email Subject, File Name, and File Extension. Legal personnel shall be identified as such by adding an asterisk before or after their names in the privilege log.

 b. A party shall only be required to include on the privilege log the most inclusive email in a chain with the same participants and discussing the same subject matter. Lesser included emails need not be separately logged provided they meet these criteria. If the participants or subject matter change in the course of the chain, a new entry shall be required on the privilege log.

 c. Privilege logs need not include redactions from produced Documents, provided the reason for the redaction appears on the redaction label and the unredacted portion of the document contains content that allows other parties to assess the claim of privilege.

 d. The Parties are not required to log privileged communications or work product exchanged solely between the Parties and their external counsel. The Parties are also not required to log privileged communications or work product created after discovery of the incident and exchanged solely between a Party, the Party's counsel, and the Party's experts relating to the data incident, provided that the experts were hired by outside counsel after discovery of the data incident to assist counsel in providing legal advice to the Parties with responding to the incident and/or in anticipation of litigation arising from the incident and had no prior relationship or contract with the Party for services related to data security.

Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

**7.    MODIFICATION**

This ESI Protocol may be modified by a stipulation of the parties or by the Court for good cause shown.

_____
**UNITED STATES ~~DISTRICT~~ JUDGE**
Magistrate

**Appendix A**

**Technical Specifications for Production**

1.     **PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER**

For documents that have originated in paper format, the following specifications should be used for their production.

- Images should be produced as single page TIFF group IV format imaged at 300dpi. If not practical to produce in TIFF format, images should be produced in native format with a placeholder TIFF image stating that the document was produced natively.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- Media may be delivered on CDs, DVDs or External USB hard drives. Media may also be delivered using a secure FTP site. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an image cross reference file that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

    Field Separator, ASCII character 020: """

    Quote Character, ASCII character 254 "þ"

    Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

2. **PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS**

Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

For standard documents, emails, and presentations originating in electronic form, documents should be produced as tiff images using the same specifications above with the following exceptions:

- Provide a delimited text file (using the delimiters detailed above) containing the extracted metadata fields where they exist in the file being produced. (But nothing shall require the production of metadata that does not exist or would be unduly burdensome to collect.)

  Beginning Production Number
  Ending Production Number
  Beginning Attachment Range
  Ending Attachment Range
  Number of Attachments
  Attachment File Names
  Custodian
  Other Custodian (if global de-duplication is employed)
  Confidentiality Designation
  Document Type
  Document Title
  Document Extension
  Author
  Page Count
  File Name
  File Size
  Hash Value
  Date Last Modified
  Time Last Modified
  Date Created
  Time Created
  Date Last Accessed
  Date Sent
  Time Sent

> Date Received
> Time Received
> Email From
> Recipients
> Copyees
> Blind Copyees
> Email Subject
> Path/Link to Native File (Relative path to any files produced in native format, such as Excel spreadsheets or PowerPoints or media files)
> OCR/ExtractedText Path
> Conversation Index

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

- All spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e. emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The file name should match the bates number assigned to the file. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form. The parties agree to work out a future protocol governing the use and format of documents produced pursuant to this paragraph at trial, depositions or hearings (such as converting to tiff images in accordance with the above protocol).

- Media and audio visual files (including but not limited to photos, videos and audio files) will be produced as native files showing comments, hidden texts and comments, and similar data, excluding near zero image files and such images in signature blocks. A UNC file path must be included in the ESI load file. Additionally, a bates-stamped *.tif placeholder matching the bates number of the native file, must be included in the production and reflected in the image load file, with language to indicate the file was produced natively.

13

LEGAL02/39240884v4

3. **PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA**

- If a database or other source of structured data contains responsive information, the parties agree to meet and confer to determine whether it is proportionate to the needs of the case to produce the responsive information and, if so, the method and manner for producing responsive information in a manner that is reasonable and proportionate to the needs of the case.

4. **PRODUCTION OF TRANSCRIPTS**

If deposition or other transcripts are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the transcripts. Before meeting and conferring, the producing party will provide the following information about the responsive transcripts. To the extent that the information listed below does not exist or is not reasonably accessible or available, nothing in this ESI Protocol shall require any party to extract, capture, collect or provide such information.

> Date of the deposition, trial, hearing or other event (each an "event");
> Duration of the event;
> Name of the individual(s) who was/were recorded;
> The forms in which the transcripts exist such as PDF, text file,
> livenote or etranscript format (.lef, .ptx, or .ptz); and
> List of exhibits associated with the transcript and/or event